UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NIGEL B. PUREFOY, | ) | CASE NO. 5:19-cv-1233 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| WARDEN BRANDSHAWN HARRIS, | ) | |
| RESPONDENT. | ) | |

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Darrell A. Clay recommending dismissal of the petition for writ of habeas corpus filed by petitioner Nigel Purefoy ("Purefoy" or "petitioner"). (Doc. No. 28.) Purefoy timely filed his objections to the R&R pursuant to Fed. R. Civ. P. 72(b)(2). (Doc. No. 30.) Respondent Warden Brandshawn Harris ("Respondent") filed no response to the objections and the time for doing so under the rule has expired. For the reasons set forth herein, Purefoy's petition for writ of habeas corpus is denied in its entirety.

**I.    LEGAL STANDARD**

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See also Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court

in light of specific objections filed by any party."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). After review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Although the Court must review de novo any matter properly objected to, it must do so under a deferential standard of review.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). In *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000), the Sixth Circuit, variously quoting *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), noted the Supreme Court's explanation of these standards:

> [A] decision of the state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." [citation omitted]. . . . [A]n "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." [citation

2

omitted]. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." [citation omitted].

The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (citation omitted). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*.

"If this standard is difficult to meet, that is because it was meant to be." *Id.* Although 28 U.S.C.§ 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 22244(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)) (Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam) (collecting cases). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in

3

justification that there was an error well understood and comprehended in existing law beyond a possibility for fairminded disagreement." *Harrington*, 562 U.S. 103.

## II. DE NOVO REVIEW

The R&R sets forth in detail the procedural history of the case, including Purefoy's jury trial in state court, which resulted in multiple convictions for aggravated burglary and aggravated robbery. Purefoy does not take issue with the magistrate judge's recitation of the procedural history, and the Court accepts the magistrate judge's summary, as if rewritten herein. (Doc. No. 28 at 5–10[1].) Additionally, because the facts of the case have been repeated numerous times, both by the state appellate court and by the magistrate judge, they need not be repeated here in their entirety. Therefore, only a brief overview of the facts is required. Where appropriate, the Court cites verbatim the relevant facts relied upon by the Ohio Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

### A. The Proceedings in State Court

Purefoy was charged in state court in connection with a string of robberies. He initially pled guilty to the charges but was subsequently permitted to withdraw his guilty pleas. Prior to trial, Purefoy sought, through newly appointed counsel, to suppress the statements he made to police during an interview at the Barberton Police Department. After holding a hearing on the motion, the trial court published a journal entry denying the motion on June 29, 2015. The case proceeded to trial, during which several of Purefoy's alleged victims testified as to the details of

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system, a citation practice recently adopted by the Court.

the robberies. On September 4, 2015, the jury returned guilty verdicts on all counts, including the firearm specification attached to each count.

Purefoy filed a direct appeal. After an initial remand to permit the trial court an opportunity to make findings of fact and conclusions of law relative to its suppression ruling, Purefoy challenged his convictions on several grounds. Specifically, he maintained that the trial court erred in admitting coerced statements. He also claimed that he was denied his constitutional right to a speedy trial, and he challenged the sufficiency of the evidence.

Purefoy's suppression argument hinged on whether he was in custody when he was interviewed by police at the Barberton Police Station and whether he was coerced by his uncle, Sergeant Jerome Hall of the Summit County Sherriff's Office, into making involuntary statements when his uncle suggested that he should "come clean and confess." *State v. Purefoy*, No. 28597, 2018 WL 542355, at *2 (Ohio Ct. App. Jan. 24, 2018). According to the state court record, Sergeant Hall accompanied his nephew to the police station so that Purefoy could inquire about retrieving his impounded vehicle. While there, Purefoy agreed to speak with Barberton police officers about some robberies in the neighborhood. Even though Sergeant Hall played no official role in the interview, or in the underlying investigation into the robberies, Purefoy claimed that his uncle was working in concert with the Barberton police officers to coerce a confession from him. According to Purefoy, the result was a custodial interrogation, without the benefit of *Miranda*[2] warnings, that violated his Fifth Amendment rights. *Id*.

The Ninth District Court of Appeals rejected petitioner's claim. After identifying the standard for reviewing Fifth Amendment claims, including governing United States Supreme

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct, 1602, 16 L. Ed. 2d 694 (1966).

5

Court law relative to "custodial interrogations" and the voluntariness of statements made to law enforcement, the court of appeals applied the facts of the case to these standards as follows:

> Mr. Purefoy voluntarily went to the police station along with his uncle in an effort to retrieve his impounded vehicle. When he first arrived, he spoke casually with Detective Roberts [of the Barberton Police Department] about the vehicle and was not placed under arrest or taken into custody. He sat down in a chair and was not handcuffed, restrained, or told that he was not free to leave. The room's two doors were closed for privacy, but were not locked. When Mr. Purefoy asked if he could speak to his uncle, Detective Roberts granted the request and allowed Mr. Purefoy several minutes to speak to his uncle privately. Under these circumstances, we cannot conclude that a reasonable person in Mr. Purefoy's situation would have believed that he was not free to leave. Accordingly, we conclude that Mr. Purefoy was not in custody for *Miranda* purposes prior to Detective Kline entering the room and formally placing him in custody.
>
> The trial court also disagreed with Mr. Purefoy's argument that his statements to the police were not voluntary, but were instead the product of police coercion since Sergeant Hall was wearing his police uniform and pressuring Mr. Purefoy into making incriminating statements. "[T]he Fifth Amendment privilege is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.'" *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986), quoting *Oregon v. Elstad*, 470 U.S. 298, 305, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985). "*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that." *Connelly* at 170, 107 S. Ct. 515. "'[T]he state caries the burden of proving voluntariness of a confession by a preponderance of the evidence.'" *State v. Wooden*, 9th Dist. Summit No. 23992, 2008-Ohio-3629, ¶ 7, quoting *State v. Hill*, 64 Ohio St. 3d 313, 317, 595 N.E.2d 884 (1992). "The voluntariness of a confession is reviewed under a totality-of-the-circumstances standard." *Id*. "The totality of the circumstances includes 'the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *Id*., quoting *State v. Edwards*, 49 Ohio St. 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, *overruled on other grounds Edwards v. Ohio*, 438 U.S. 911, 98 S. Ct. 3147, 57 L. Ed. 2d 1155 (1978). The decision to waive the right to Fifth Amendment privilege against self-incrimination is considered voluntary absent evidence that a person's will was overborne and that his capacity for self-determination was critically impaired because of coercive police conduct. *Id*.
>
> Here, Sergeant Hall accompanied Mr. Purefoy and gave him a ride to the police station, but remained in the hallway while Mr. Purefoy spoke privately to Detective Roberts about retrieving his impounded vehicle. It was only after Mr. Purefoy thrice

6

requested Sergeant Hall's presence in the room that Detective Roberts brought Sergeant Hall into the room. Detective Roberts then stepped out of the room and allowed the two men some time to speak privately to each other. After Detective Roberts and Detective Kline entered the room, officially placed Mr. Purefoy in custody, and read him his *Miranda* rights, they asked him some more questions. Sergeant Hall remained in the room and Mr. Purefoy never asked him to leave. Sergeant Hall never asked Mr. Purefoy any questions during the interview. Sergeant Hall's occasional comments were few and far between and were limited to variations of statements encouraging Mr. Purefoy to "help himself" and "be truthful." "Suspects have no constitutional protection against friends or family members who convince them to talk to police." *Van Hook v. Anderson*, 488 F.3d 411, 421 (6th Cir. 2007). More, "[a]dmonitions to tell the truth are not coercive in nature." *State v. Martinez*, 8th Dist. Cuyahoga Nos. 103572, 2016-Ohio-5515, ¶ 32. *See also State v. Loza*, 71 Ohio St. 3d 61, 67, 641 N.E.2d 1082 (1994) ("Admonitions to tell the truth are considered to be neither threats nor promises and are permissible."). At no time [in the video recording of the interview] does Sergeant Hall tell Mr. Purefoy to confess to any crimes or make any other incriminating statements. He does not appear to be involved in either of the criminal investigations or otherwise working with the other two officers in any official capacity, and he is only present in a supportive role on Mr. Purefoy's behalf and at Mr. Purefoy's request. Mr. Purefoy was not threatened or mistreated during the interview. When he claimed he was hungry, Sergeant Hall brought him some food. In fact, near the end of the interview, Mr. Purefoy actually says to the officers, "I just wanna say thanks. I just wanna say thank you for not mistreating me. Thank you. Thank you for not mistreating me. I've had bad experiences with police officers that I was, I just, I'm scared of 'em. I'm scared of them." Considering the totality of the circumstances in Mr. Purefoy's case, we cannot conclude that his will was overborne or that his capacity for self-determination was critically impaired because of coercive police conduct. *See Wooden* at ¶ 7. Thus, we conclude that his statements to the police were voluntary and not the byproduct of any coercion on the part of the police.

*Purefoy*, 2018 WL 542355, at *4–5.

**B.     Purefoy's Petition and the R&R**

On May 20, 2019, Purefoy filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) In his petition. Purefoy argued that his statements to the police were coerced (Ground One); that he was denied his constitutional right to a speedy trial (Ground Two); and that his convictions on the underlying burglary and robbery counts, as well as the firearm specifications, were against the manifest weight of the evidence (Grounds Three and Four). (*Id*. at 5–10.)

In the R&R, the magistrate judge recommended that the petition be dismissed as to each ground. (Doc. No. 28 at 1–2, 31.) The magistrate judge found that the court of appeals properly applied Supreme Court precedent in concluding that, based on the totality of the circumstances, Purefoy's will was not overborne and that his statements were not coerced. (*Id*. at 12–18.) The magistrate judge also determined that Purefoy's speedy trial claim was procedurally defaulted because he did not challenge the court of appeal's determination of this claim in his appeal to the Ohio Supreme Court. (*Id*. at 19.) As for his manifest weight claims, the magistrate judge construed these claims as challenging the sufficiency of the evidence. (*See id*. at 20–21.) Reviewing the record evidence "in the light most favorable to the prosecution," the magistrate judge determined that Purefoy had failed to demonstrate that "no rational trier of fact could have found the essential elements of his crimes beyond a reasonable doubt." (*Id*. at 21, 31; *see id*. at 19–31.)

### C. Purefoy's Objections

Purefoy has confined his objections to the magistrate judge's recommended disposition of Ground One of the habeas petition. The Court has reviewed the R&R's treatment of Grounds Two through Four and adopts the same. These claims are dismissed.

On the subjects of custodial interrogation and police coercion set forth in Ground One, the magistrate judge reasoned:

> Here, the Ninth District [Court of Appeals] relied on the following factors, among others: Mr. Purefoy voluntarily came to the station and was not handcuffed nor told he could not leave; was not threatened during police questioning; was exhorted to 'tell the truth' but not otherwise coerced by his uncle, Sergeant Hall[,] into making any incriminating statements; was provided food when he stated he was hungry; and thanked the officers for not mistreating him. The Ninth District noted that once Mr. Purefoy was placed under formal arrest (about 34 minutes after the interview began), the arresting officers gave Mr. Purefoy his *Miranda* warnings.
>
> In all, the Ninth District determined that, based on the totality of the circumstances, Mr. Purefoy's will was not overborne nor was his capacity for self-determination critically impaired by coercive police conduct; thus, it upheld the trial court's decision denying Mr. Purefoy's motion to suppress. Indeed, the Ninth District relied on U.S. Supreme Court precedent in reaching its determination. I therefore decline to recommend relief on this ground.

(*Id*. at 18 (footnote and internal citations omitted).)

Beginning with the magistrate judge's determination regarding custody, Purefoy insists that the record demonstrates that his uncle was covertly working with law enforcement personnel from the Barberton Police Department to obtain a confession. "Although Purefoy may not have been told he would be placed under arrest, the numerous officers involved were certainly aware of it and were acting in concert with one another to obtain a confession prior to doing so." (Doc. No. 30 at 3 (record citations omitted).) According to Purefoy, these facts necessitated a finding that he was "in custody from the moment he stepped into the interview room." (*Id*.)

9

But Supreme Court precedent is clear that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994). "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkermer v. McCarty*, 468 U.S. 420, 442, 104 S. Ct. 3138, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984) (citation omitted). "To the extent the law enforcement officer's information and beliefs remained unarticulated throughout the interview, they have no bearing on the question of whether the suspect was in custody." *United States v. Salvo*, 133 F.3d 943, 952 (6th Cir. 1998) (citing *Berkermer*, 468 U.S. at 442).

In *Salvo*, the Sixth Circuit rejected an argument similar to that advanced by Purefoy. There, the district court determined that the defendant was in custody at the time he confessed to the crime of possessing and receiving child pornography. The district court relied in part on the fact that law enforcement suspected defendant of the crime at the time of the interview, and that they coordinated their efforts with an official from the Boy Scouts in order to obtain a confession. *Salvo*, 133 F.3d at 951–52. After reviewing governing Supreme Court precedent, the Sixth Circuit reversed, finding that the district court impermissibly "focused on what the agents knew about [the suspect's] activities, rather than what their actual conduct was toward [the suspect] and whether, as a result of that conduct, he reasonably should have felt he was in custody." *Id*. at 952; *see United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (*Miranda* warnings are not required simply because the questioned person is the one whom the police suspect) (quotation marks and citation omitted).

The rationale and decision in *Salvo* counsels in favor of denying Purefoy's claim. *See also McCalvin v. Yukins*, 444 F.3d 713, 721 (6th Cir. 2006) ("Although only Supreme Court case law

10

is relevant under the AEDPA in deciding what federal law is clearly established, lower federal court decisions may be used to the extent we have already reviewed and interpreted the relevant Supreme Court law.") The state appellate court properly considered the totality of the objective circumstances of the interrogation that were known to and appreciated by Purefoy in determining that he was not in custody at the time he was questioned by police. Any suspicions or unarticulated beliefs that were harbored by the investigating agents but unexpressed to Purefoy were properly excluded from the analysis. Under the deference required by the AEDPA, and given the facts supporting a finding that Purefoy was not in custody—as set forth in the state appellate decision and the R&R—the decision of the Ohio appellate court as to this point was a reasonable application of federal law.

Of course, Purefoy would still be entitled to habeas relief if he could demonstrate that the state appellate court's finding of an absence of police coercion represented an unreasonable determination of the facts in light of the governing federal law. *See also United States v. Macklin*, 900 F.2d 948, 951 (6th Cir. 1990) ("Even if *Miranda* warnings are not required, a confession cannot be used if it is involuntary.") (collecting Supreme Court authority). Purefoy complains that the magistrate judge's reliance on the facts that he was given a snack and was grateful for not being mistreated was error because such facts are "indicative of basic human decency—not that he was free to leave." (Doc. No. 30 at 5.) He suggests that "whether the suspect's hunger was satisfied or whether the suspect was polite after being treated like a human being by the police" were not among the enumerated facts identified by the Supreme Court in *Withrow v. Williams*, 507 U.S. 680, 693, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993) as pertinent to whether a confession was voluntary and not result of the coercion. (*Id*.) He reasons that "detectives were hardly going to

11

threaten Purefoy or mistreat him in front of his uncle, who's cooperation was facilitating the interrogation." (*Id*.)

Purefoy's objection misses the point. "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). *Withrow* teaches that "courts look to the totality of circumstances to determine whether a confession was voluntary." *Withrow*, 507 U.S. at 693; *see, e.g., Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) ("In determining whether a defendant's will was overborne in a particular case, the [Supreme] Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation."). "Relevant factors may include the defendant's age, education and intelligence; whether the defendant has been informed of his constitutional rights; the length and extent of the questioning; and the use of physical punishment, such as the deprivation of food or sleep." *Mahan*, 190 F.3d at 422–23 (citations omitted); *see McCalvin*, 444 F.3d at 719 (citing *Schneckloth*, 412 U.S. at 226).

Here, the state appellate court correctly analyzed the voluntariness of Purefoy's confession—including the police's treatment of him—under the totality of the circumstances surrounding the interrogation. Purefoy posits, however, that the state court erred in applying the facts to find that Purefoy was not coerced when his uncle urged him to "confess and come clean[.]" (Doc. No. 30 at 4.) Citing to testimony in the record, he insists that his uncle "was part of the coercion, and Purefoy's uncle participated in coercing him to make incriminating statements." (*Id*.) In particular, Purefoy points to the trial testimony of Detective Kline who testified that Sergeant

12

Hall's "role" was to convince Purefoy to tell the officers what happened. (*Id*. (citing Doc. No. 10-6 (Trial Transcript) at 137.)

There are two problems with this argument. First, the state appellate court found that the Barberton police were not coordinating their efforts with Sergeant Hall in order to obtain a confession, such that Sergeant Hall's comments could be considered police conduct. *Purefoy*, 2018 WL 542355, at *5. Under the deference afforded on habeas review, this factual determination is presumed correct. *See Wagner*, 581 F.3d at 413; *see also McCalvin*, 444 F.3d at 720 ("[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the state-court decision applied [the law to the facts] incorrectly.'") (quoting *Visciotti*, 537 U.S. at 24–25). The video recording of the interview showed that Sergeant Hall asked no questions and his "occasional comments were few and far between . . . ." *Purefoy*, 2018 WL 542355, at *5. He also waited in the hall while Barberton officers questioned Purefoy and did not enter the interview room until after Purefoy "thrice" requested to speak with him. *Id*. While Purefoy suggests that the record also supports a contrary conclusion, the Court cannot say that the state appellate court's factual determination was so lacking in justification that it is beyond a possibility that fairminded jurists would agree. *See Harrington*, 562 U.S. at 102.

Second, even if Sergeant Hall's advice to his nephew could be attributed to the Barberton police, it would not be considered objectively coercive. While some interrogation techniques are so offensive that their use can render a confession coerced and involuntary, encouraging a suspect to tell the truth is not one of them. *See, e.g., Mahan*, 190 F.3d at 422 (no coercion where law enforcement agent told suspect he could get into serious trouble for providing false information); *United States v. Brinson*, 787 F.2d 593 (Table), 1986 WL 16715, at *2 (6th Cir. Mar. 4, 1986) (per curiam) ("[E]ncouraging [suspect] to tell the truth is no more than affording her a chance to make

13

an informed decision with respect to her cooperation with the government.") (quoting *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978)).

Sergeant Hall's advice to his nephew was not objectively coercive, and it was not unreasonable for the state appellate court to conclude that Purefoy's will was not overborne. The state appellate court thoroughly evaluated all of the facts surrounding the police interview before concluding that Purefoy's confession was not coerced. Upon considering the totality of the circumstances surrounding the confession, including the brevity of the interview and Purefoy's treatment by the officers during it, the Court finds that it was objectively reasonable for the state appellate court to hold that law enforcement did not overbear Purefoy's will when obtaining his confession.

Accordingly, Purefoy is not entitled relief on Ground One.

### III. CONCLUSION

Upon de novo review, all matters raised in Purefoy's objections are overruled. Accordingly, the Court denies the habeas petition in its entirety. Further, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which

to issue a certificate of appealability. 28 U.S.C. §§ 1915(a)(3), 2253(c); Fed. R. App. P. 22(b).

    **IT IS SO ORDERED**.


Dated: July 13, 2022

                                                          **HONORABLE SARA LIOI**
                                                          **UNITED STATES DISTRICT JUDGE**